JUDGE COTE

Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Spencer J. Wolgang (SW 2389)
swolgang@ipcounselors.com
Mary Kate Brennan (MB 5595)
mbrennan@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiffs*
*Spin Master Ltd. and Spin Master, Inc.*



17 CV 7422

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPIN MASTER LTD. and SPIN MASTER, INC.,
*Plaintiffs*

v.

ALAN YUAN'S STORE; ANGEL 123;
ASTORIATOY STORE; BRAND CHILDREN'S
MILA; SHENZHEN CBP TECHNOLOGY CO.,
LTD. D/B/A CBPBRUCELAM; DAN HUI
INTERNATIONAL TRADE CO., LTD. D/B/A
PADA CRAFT; CHILD'S TOY KINGDOM;
GUANGZHOU PLUS TRADING CO., LTD.
D/B/A COLORFULFLOWER; DARLINGBABY
STORE; ELECTRICAL SPARKLE; ESHOP_DH
TECHNOLOGY CO., LIMITED D/B/A
ESHOPDH; FABULOUS SHENZHEN SRORE;
FASHIONA MONICA; FLYING MODEL; GAME
ZONE STORE; GEE-GEE STORE; GEEK
ALERT; GEEK HUMOR; GROWTH TOY
WHOLESALE A/K/A LITTLE HEE FUN STORE;
GUANGHUIYIFANG; GUANGZHOU TAILOR
FASHION CO., LTD.; HAPPIER LIFE;
HAPPYDEAL STORE; HELLOBABE; HITOP
D/B/A SMARTPHONE ACCESSORIES; HOARD
STORE; HUNAN DOUBLE BULLS GIFTS CO.,
LTD.; I-COODEL STORE; JUNYANG STORE;
JUSTBUY STORE; KNIGHTS; L&Y EXPORT;

**CIVIL ACTION No.**

**COMPLAINT**

**Jury Trial Requested**

**FILED UNDER SEAL**

GOOPHONE S8 S8 PLUS I7 SMARTPHONE;
NEVER MORE; NINGBO KM IMPORT &
EXPORT CO., LTD.; REDPEACH SWEET
STORE; SHANTOU CHENGHAI HENGYE
TOYS FACTORY; SHANTOU CHENGHAI
MAYA TOYS FACTORY; SHANTOU CITY
BHX CO., LTD.; SHANTOU GEEKMAN
TECHNOLOGY CO., LTD.; SHANTOU JH
TOYS TRADING FIRM; SHANTOU JOYTEAM
TOYS FACTORY; SHANTOU SINGDATOYS
TRADING FIRM; SHANTOU TAI XING YUAN
TOYS FIRM; SHANTOU TOPTRUE TOYS
TRADING FIRM; SHENZHEN ANRAN
TRADING CO., LTD.; SHENZHEN BOOMHOT
INDUSTRY COMPANY LIMITED; SHENZHEN
CAPITAL ELECTRONICS CO., LTD.;
SHENZHEN K-CREATE CO., LTD.; SHENZHEN
NORDA TOYS & GIFTS INDUSTRIAL
LIMITED; SHENZHEN SUNSHION OVISTORE;
SHOP1798081 STORE; SICHA STORE; SIMPLE
IS BEAUTIFUL; SPECIAL TOYS STORE 3.29;
SUNFLOWERS HOUSE STORE; VETICE TOY
FACTORY; VTOY; WJTF1234; WOMEN &
BABY CLOTHES STORE; XIAMEN DOMINGO
TRADING CO., LTD.; XIAOBING STORE; YI
LONG YUAN STORE; YIWUSUMAI0802
STORE; YIXIAOJUNSHU2014; and ZDOMAIN3,
*Defendants*

Plaintiff Spin Master Ltd., a limited liability company organized in Canada, and Plaintiff

Spin Master, Inc., a Delaware corporation and Plaintiff Spin Master Ltd.'s wholly-owned

subsidiary and exclusive U.S. licensee, (hereinafter collectively referred to as "Plaintiffs"), by

and through their undersigned counsel, allege as follows:

## NATURE OF THE ACTION

1.     This action involves claims for trademark infringement of Plaintiffs' federally

registered trademark in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§

1051 *et seq*.; counterfeiting of Plaintiffs' federally registered trademarks in violation of 15

U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c); false designation of origin and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); copyright infringement of Plaintiffs' federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*.; and related state and common law claims (the "Action"), arising from the infringement of Plaintiffs' Marks (as defined *infra*) and/or Copyright Works (as defined *infra*) by Defendants alan yuan's store, Angel 123, Astoriatoy Store, Brand Children's MILA, Shenzhen CBP Technology Co., Ltd. d/b/a Cbpbrucelam, Dan Hui International Trade Co., Ltd. d/b/a PADA CRAFT, Child's toy kingdom, Guangzhou plus Trading Co., Ltd. d/b/a Colorfulflower, Darlingbaby Store, Electrical Sparkle, Eshop_dh Technology Co., Limited d/b/a Eshopdh, Fabulous Shenzhen Store, Fashion Monica, Flying Model, Game Zone Store, Gee-Gee Store, Geek Alert, GEEK HUMOR, Growth Toy Wholesale a/k/a LITTLE HEE FUN Store, GuangHuiYiFang, Guangzhou Tailor Fashion Co., Ltd., Happier Life, happydeal Store, Hellobabe, Hitop d/b/a Smartphone Accessories, Hoard Store, Hunan Double Bulls Gifts Co., Ltd., I-Coodel Store, JunYang Store, JustBuy Store, Knights, L&Y export; goophone S8 S8 Plus i7 plus Smartphone; never more; Ningbo KM Import & Export Co., Ltd., Redpeach Sweet Store, Shantou Chenghai Hengye Toys Factory, Shantou Chenghai Maya Toys Factory, Shantou City BHX Co., Ltd.; Shantou Geekman Technology Co., Ltd., Shantou JH Toys Trading Firm, Shantou Joyteam Toys Factory, Shantou Singdatoys Trading Firm, Shantou Tai Xing Yuan Toys Firm, Shantou Toptrue Toys Trading Firm, Shenzhen anran trading Co., Ltd., Shenzhen Boomhot Industry Company Limited, Shenzhen Capital Electronics Co., Ltd., Shenzhen K-create Co., Ltd., Shenzhen Norda Toys & Gifts Industrial Limited, Shenzhen Sunshion OviStore, Shop1798081 Store, Sicha Store, Simple is beautiful, Special toys store 3.29, Sunflowers House Store, Vetice Toy Factory, Vtoy, Wjtf1234, Women & Baby Clothes Store,

Xiamen Domingo Trading Co., Ltd., xiaobing Store, yi long yuan Store, YiWuSuMai0802 Store, yixiaojunshu2014, and Zdomain3 (hereinafter collectively referred to as "Defendants"), including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying offering for sale, and/or selling unlicensed, infringing, and/or counterfeit versions of Plaintiffs' Authentic Products (as defined *infra*).

## JURISDICTION AND VENUE

2.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. and the Copyright Act, 17 U.S.C. §§ 101 *et seq*.; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition; and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.   This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

3.      Personal jurisdiction exists over Defendants in this judicial district pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in New York and in this judicial district, and/or derive substantial revenue from their business transactions in New York and in this judicial district, and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' infringing and counterfeiting actions caused

injury to Plaintiffs in New York and in this judicial district such that Defendants should reasonably expect such actions to have consequences in New York and in this judicial district, for example:

    a.   Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through Defendants' user accounts and/or online storefronts on the Digital Marketplaces (as defined *infra* and hereinafter collectively referred to as "Storefronts") through which consumers in the U.S., including New York, can view Defendants' Storefronts, communicate with Defendants regarding their listings for Counterfeit and/or Infringing Products (as defined *infra*) and place orders for, receive invoices for, and purchase Infringing Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

    b.   Upon information and belief, Defendants are sophisticated sellers operating commercial businesses through their respective Storefronts, offering for sale and/or selling Infringing Products in wholesale quantities at well below market prices to consumers worldwide, including to consumers in the U.S., and specifically in New York.

    c.   Upon information and belief, a majority of Defendants' Storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S., which make up significant percentages of Defendants' total revenues (which are estimated, in several cases, to be in the millions of dollars).

    d.  Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address (as defined *infra*).

    e.  Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Infringing Products.

    f.  Upon information and belief, Defendants are aware of Plaintiffs, Plaintiffs' Authentic Products, Plaintiffs' Marks, and Plaintiffs' Copyright Works, and are aware that their infringing actions, alleged herein, are likely to cause injury to Plaintiffs in the U.S., in New York, and this judicial district specifically, as Plaintiff Spin Master, Inc. conducts business and has a registered office in New York.

4.    Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact, and/or solicit business in this judicial district.

## THE PARTIES

5.    Plaintiff Spin Master Ltd. is a Canadian corporation with a principal place of business at 121 Bloor St. East, Toronto, ON, M4W 1A9, Canada.

6.    Plaintiff Spin Master, Inc. is a Delaware corporation with a registered office at 300 International Drive, Suite 100, Williamsville, New York 14421, and principal place of business at 5880 W. Jefferson Blvd., Suite A, Los Angeles, California 90016.

7.      Upon information and belief, Defendant alan yuan's store is a merchant on AliExpress.com, at https://aliexpress.com/store/507795, where it offers for sale and/or sells Infringing Products, with a principal place of business in China (Mainland).

8.      Upon information and belief, Defendant Angel 123 is a merchant on AliExpress.com, at https://aliexpress.com/store/2031029, where it offers for sale and/or sells Infringing Products, with a principal place of business in China (Mainland).

9.      Upon information and belief, Defendant Astoriatoy Store is a merchant on AliExpress.com, at https://aliexpress.com/store/2206070, where it offers for sale and/or sells Infringing Products, with a principal place of business in China (Mainland).

10.      Upon information and belief, Defendant Brand Children's MILA is a merchant on AliExpress.com, at https://aliexpress.com/store/1801702, where it offers for sale and/or sells Infringing Products, with a principal place of business in China (Mainland).

11.      Upon information and belief, Defendant Shenzhen CBP Technology Co., Ltd. d/b/a Cbpbrucelam is a merchant on DHgate.com, at https://www.dhgate.com/store/19647863, where it offers for sale and/or sells Infringing Products, with a principal place of business in Guangdong, China (Mainland).

12.      Upon information and belief, Defendant Dan Hui International Trade Co., Ltd. d/b/a PADA CRAFT is a merchant on DHgate.com, at https://www.dhgate.com/store/19726746, where it offers for sale and/or sells Infringing Products, with a principal place of business in Guangdong, China (Mainland).

13.      Upon information and belief, Defendant Child's toy kingdom is a merchant on AliExpress.com, at https://aliexpress.com/store/1980169, where it offers for sale and/or sells Infringing Products, with a principal place of business in China (Mainland).

14.     Upon information and belief, Defendant Guangzhou plus Trading Co., Ltd. d/b/a Colorfulflower is a merchant on DHgate.com, at https://www.dhgate.com/store/20462190, where it offers for sale and/or sells Infringing Products, with a principal place of business in Guangdong, China (Mainland).

15.     Upon information and belief, Defendant Darlingbaby Store is a merchant on AliExpress.com, at https://darlingbaby.aliexpress.com/store/2805088, where it offers for sale and/or sells Infringing Products, with a principal place of business in China (Mainland).

16.     Upon information and belief, Defendant Electrical Sparkle is a merchant on AliExpress.com, at https://aliexpress.com/store/1392748, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

17.     Upon information and belief, Defendant Eshop_dh Technology Co., Limited d/b/a Eshopdh is a merchant on DHgate.com, at https://www.dhgate.com/store/19887422, where it sells and/or offers for sale Infringing Products, with a principal place of business in Henan, China (Mainland).

18.     Upon information and belief, Defendant Fabulous Shenzhen Store is a merchant on AliExpress.com, at https://aliexpress.com/store/1939572, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

19.     Upon information and belief, Defendant Fashion Monica is a merchant on AliExpress.com, at https://aliexpress.com/store/1849586, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

20.     Upon information and belief, Defendant Flying Model is a merchant on AliExpress.com, at https://aliexpress.com/store/917824, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

21.     Upon information and belief, Defendant Game Zone Store is a merchant on AliExpress.com, at https://aliexpress.com/store/536064, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

22.     Upon information and belief, Defendant Gee-Gee Store is a merchant on AliExpress.com, at https://aliexpress.com/store/2948253, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

23.     Upon information and belief, Defendant Geek Alert is a merchant on AliExpress.com, at https://geekalerts.aliexpress.com/store/605238, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

24.     Upon information and belief, Defendant GEEK HUMOR is a merchant on AliExpress.com, at https://aliexpress.com/store/613234, where it sells and/or offers for sale Infringing Products, with a principal place of business in Guangdong, China (Mainland).

25.     Upon information and belief, Defendant Growth Toy Wholesale a/k/a LITTLE HEE FUN Store is a merchant on AliExpress.com, at https://growthtoy.aliexpress.com/store/1987861, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

26.     Upon information and belief, Defendant GuangHuiYiFang is a merchant on AliExpress.com, at https://aliexpress.com/store/1985578, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

27.     Upon information and belief, Defendant Guangzhou Tailor Fashion Co., Ltd. is a merchant on Alibaba.com, at https://tailorfashion.en.alibaba.com, where it sells and/or offers for sale Infringing Products, with a principal place of No. 5-1, Lane 6, East Shuikoifang, Jiushuikeng Village, Dalong Street, Panyu District, Guangzhou, Guangdong, China (Mainland).

28.    Upon information and belief, Defendant Happier Life is a merchant on AliExpress.com, at https://aliexpress.com/store/1919298, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

29.    Upon information and belief, Defendant happydeal Store is a merchant on AliExpress.com, at https://aliexpress.com/store/2334143, where it sells and/or offers for sale Infringing Products, with a principal place of business in Shanghai, China (Mainland).

30.    Upon information and belief, Defendant Hellobabe is a merchant on AliExpress.com, at https://aliexpress.com/store/2212146, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

31.    Upon information and belief, Defendant Hitop d/b/a Smartphone Accessories is a merchant on DHgate.com, at https://www.dhgate.com/store/14499786, where it sells and/or offers for sale Infringing Products, with a principal place of business in Guangdong, China (Mainland).

32.    Upon information and belief, Defendant Hoard Store is a merchant on AliExpress.com, at https://www.aliexpress.com/store/2789128, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

33.    Upon information and belief, Defendant Hunan Double Bulls Gifts Co., Ltd. is a merchant on Alibaba.com, at https://doublebulls.en.alibaba.com, where it sells and/or offers for sale Infringing Products, with a principal place of business of 11-2003, Runhe Zijun, Yueliangdao Street, Wangcheng Dist., Changsha, Hunan, China (Mainland).

34.    Upon information and belief, Defendant I-Coodel Store is a merchant on AliExpress.com, at https://www.aliexpress.com/store/2930053, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

35.     Upon information and belief, Defendant JunYang Store is a merchant on AliExpress.com, at https://aliexpress.com/store/2797216, where it sells and/or offers for sale Infringing Products, with a principal place of business in Guangdong, China (Mainland).

36.     Upon information and belief, Defendant JustBuy Store is a merchant on AliExpress.com, at https://aliexpress.com/store/2413132, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

37.     Upon information and belief, Defendant Knights is a merchant on DHgate.com, at https://www.dhgate.com/store/19942264, where it sells and/or offers for sale Infringing Products, with a principal place of business in Guangdong, China (Mainland).

38.     Upon information and belief, Defendant L&Y export is a merchant on AliExpress.com, at https://lfayer.aliexpress.com/store/322117, where it sells and/or offers for sale Infringing Products, with a principal place of business in Zhejiang, China (Mainland).

39.     Upon information and belief, Defendant goophone S8 S8 Plus i7 plus Smartphone is a merchant on DHgate.com, at https://www.dhgate.com/store/20019137, where it sells and/or offers for sale Infringing Products, with a principal place of business in Guangdong, China (Mainland).

40.     Upon information and belief, Defendant never more is a merchant on AliExpress.com, at https://aliexpress.com/store/1495945, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

41.     Upon information and belief, Defendant Ningbo KM Import & Export Co., Ltd. is a merchant on Alibaba.com, at https://nbkmgroup.en.alibaba.com, where it sells and/or offers for sale Infringing Products, with a principal place of business of 6-9, Building 1, Wante Business Center, High and New Area, Ningbo, Zhejiang, China (Mainland).

42.     Upon information and belief, Defendant Redpeach Sweet Store is a merchant on AliExpress.com, at https://aliexpress.com/store/934205, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

43.     Upon information and belief, Defendant Shantou Chenghai Hengye Toys Factory is a merchant on Alibaba.com, at https://hengyetoys.alibaba.com/, where it sells and/or offers for sale Infringing Products, with a principal place of business of Dongqi, Xinyi Road, Longtian, Guangyi Street, Chenghai District, Shantou, Guangdong, China (Mainland).

44.     Upon information and belief, Defendant Shantou Chenghai Maya Toys Factory is a merchant on Alibabacom, at https://mayatoys.alibaba.com, where it sells and/or offers for sale Infringing Products, with a principal place of business of Oposite Nanyang Hot Pot City, Chenghai District, Shantou, Guangdong, China (Mainland).

45.     Upon information and belief, Defendant Shantou City BHX Co., Ltd. is a merchant on Alibaba.com, at https://chengji-toys.alibaba.com/, where it sells and/or offers for sale Infringing Products, with a principal place of business of Floor 2, No. 10, Zhenxing Industry Zone, Pumei, Guangyi, Chenghai District, Shantou, Guangdong, China (Mainland).

46.     Upon information and belief, Defendant Shantou Geekman Technology Co., Ltd. is a merchant on Alibaba.com, at https://geekmen.alibaba.com, where it sells and/or offers for sale Infringing Products, with a principal place of business of Haiyang Industrial South Building, Guangyang Road, Xiashan Street, Chaonan, Shantou, Guangdong, China (Mainland).

47.     Upon information and belief, Defendant Shantou JH Toys Trading Firm is a merchant on Alibaba.com, at https://cnjhtoys.alibaba.com, where it sells and/or offers for sale Infringing Products, with a principal place of business of 3/F, Building 6, Jintai Sixth Road, Taian Road, Chenghai District, Shantou, Guangdong, China (Mainland).

48.     Upon information and belief, Defendant Shantou Joyteam Toys Factory is a merchant on Alibaba.com, at https://joyteamtoys.alibaba.com/, where it sells and/or offers for sale Infringing Products, with a principal place of business of Chengyanggang Industrial Zone, Lianxia Town, Chenghai District, Shantou, Guangdong, China (Mainland).

49.     Upon information and belief, Defendant Shantou Singdatoys Trading Firm is a merchant on Alibaba.com, at https://singdatoys.alibaba.com/, where it sells and/or offers for sale Infringing Products, with a principal place of business of 8/F, Dejin Office Building, Yuting Road, Chenghua Street, Chenghai District, Shantou, Guangdong, China (Mainland).

50.     Upon information and belief, Defendant Shantou Tai Xing Yuan Toys Firm is a merchant on Alibaba.com, at https://taixingtoys.alibaba.com, where it sells and/or offers for sale Infringing Products, with a principal place of business of Dangxiao Road, Xinxiang, Chenghai District, Shantou, Guangdong, China (Mainland).

51.     Upon information and belief, Defendant Shantou Toptrue Toys Trading Firm is a merchant on Alibaba.com, at https://toptruetoys.alibaba.com, where it sells and/or offers for sale Infringing Products, with a principal place of business of Right Side of 5/F, Yonghang Office Building, Fu'an Road, Chenghai District, Shantou, Guangdong, China (Mainland).

52.     Upon information and belief, Defendant Shenzhen anran trading Co., Ltd. is a merchant on AliExpress.om, at https://aliexpress.com/store/1169507, where it sells and/or offers for sale Infringing Products, with a principal place of business in Guangdong, China (Mainland).

53.     Upon information and belief, Defendant Shenzhen Boomhot Industry Company Limited is a merchant on Alibaba.com, at https://boomhot.alibaba.com, where it sells and/or offers for sale Infringing Products, with a principal place of business of 4/F, Building A5, Yijing

Industrial City, Tianlia Community, Gongming Street, Guangming New District, Shenzhen, Guangdong, China (Mainland).

54.     Upon information and belief, Defendant Shenzhen Capital Electronics Co., Ltd. is a merchant on Alibaba.com, at https://hkcapital.alibaba.com/, where it sells and/or offers for sale Infringing Products, with a principal place of business of 9A45 Square SaiGe, HuaQing, North Road, Futian District, Shenzhen, China (Mainland).

55.     Upon information and belief, Defendant Shenzhen K-create Co., Ltd. is a merchant on AliExpress.com, at https://aliexpress.com/store/515709, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

56.     Upon information and belief, Defendant Shenzhen Norda Toys & Gifts Industrial Limited is a merchant on Alibaba.com, at https://nordatoys.alibaba.com, where it sells and/or offers for sale Infringing Products, with a principal place of business of Room 1601, Longnian Building, Longcheng Road, Longgang District, Shenzhen, Guangdong, China (Mainland).

57.     Upon information and belief, Defendant Shenzhen Sunshion OviStore is a merchant on AliExpress.com, at https://aliexpress.com/store/811040, where it sells and/or offers for sale Infringing Products, with a principal place of business in Guangdong, China (Mainland).

58.     Upon information and belief, Defendant Shop1798081 Store is a merchant on AliExpress.com, at https://aliexpress.com/store/1798081, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

59.     Upon information and belief, Defendant Sicha Store is a merchant on DHgate.com, at https://www.dhgate.com/store/14770491, where it sells and/or offers for sale Infringing Products, with a principal place of business in Guangdong, China (Mainland).

60.     Upon information and belief, Defendant Simple is beautiful is a merchant on AliExpress.com, at https://aliexpress.com/store/1305516, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

61.     Upon information and belief, Defendant Special toys store 3.29 is a merchant on AliExpress.com, at https://aliexpress.com/store/1748718, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

62.     Upon information and belief, Defendant Sunflowers House Store is a merchant on AliExpress.com, at https://aliexpress.com/store/2341195, where it sells and/or offers for sale Infringing Products, with a principal place of business in China, (Mainland).

63.     Upon information and belief, Defendant Vetice Toy Factory is a merchant on AliExpress.com, at https://aliexpress.com/store/2223021, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

64.     Upon information and belief, Defendant Vtoy is a merchant on DHgate.com, at https://www.dhgate.com/store/20482624, where it sells and/or offers for sale Infringing Products, with a principal place of business in Guangdong, China (Mainland).

65.     Upon information and belief, Defendant Wjft1234 is a merchant on DHgate.com, at https://www.dhgate.com/store/14245208, where it sells and/or offers for sale Infringing Products, with a principal place of business Henan, China (Mainland).

66.     Upon information and belief, Defendant Women & Baby Clothes Store is a merchant on AliExpress.com, at https://aliexpress.com/store/2666095, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

67.     Upon information and belief, Defendant Xiamen Domingo Trading Co., Ltd. is a merchant on Alibaba.com, at https://sharisu.alibaba.com, where it sells and/or offers for sale

Infringing Products, with a principal place of business of 703, 165 Yaojiangli, Tong'an, Xiamen, Fujian, China (Mainland).

68.     Upon information and belief, Defendant xiaobing Store is a merchant on AliExpress.com, at https://aliexpress.com/store/2959246, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

69.     Upon information and belief, Defendant yi long yuan Store is a merchant on AliExpress.com, at https://aliexpress.com/store/2480023, where it sells and/or offers for sale Infringing Products, with a principal place of business in China (Mainland).

70.     Upon information and belief, Defendant YiWuSuMai0802 Store is a merchant on AliExpress.com, at https://ilitao.aliexpress.com/store/2337246, where it sells and/or offers for sale Infringing Products, with a principal place of business in Zhejiang, China (Mainland).

71.     Upon information and belief, Defendant yixiaojunshu2014 is a merchant on DHgate.com, at https://www.dhgate.com/store/19760062, where it sells and/or offers for sale Infringing Products, with a principal place of business in Guangdong, China (Mainland).

72.     Upon information and belief, Defendant Zdomain3 is a merchant on DHgate.com, at https://www.dhgate.com/store/20645775, where it sells and/or offers for sale Infringing Products, with a principal place of business in Guangdong, China (Mainland).

## GENERAL ALLEGATIONS

### Plaintiffs and Their Authentic Products

73.     Plaintiffs are part of a large, multinational toy and entertainment company started in 1994 that designs and sells innovative children's lifestyle products and toys ("Spin Master Product(s)") under their own well-known brands, as well as under their licensed properties, such as Flutterbye Fairy, Bunchems, Hatchimals, Paw Patrol, and Air Hogs.

74.     Plaintiffs sell their Spin Master Products throughout the U.S. and the world through major retailers, quality toy stores, department stores, and online marketplaces, including, but not limited to, Walmart, Toys R Us, Target, Kohl's, and Amazon.com, among others.

75.     Additionally, Plaintiffs sell their Spin Masters Products directly through Plaintiffs' website, available at www.shop.spinmaster.com, as well as through their websites dedicated to the individual Spin Master Products.

76.     One of Plaintiffs' most recent and successful Spin Master Products is Flutterbye Fairy, a hand-held, winged toy that is design to look like, for example, a fairy (the "Authentic Products").  The Authentic Products are motor-controlled and float above users' palms using electrostatic levitation.  Additionally, each Flutterbye Fair includes a decorative base.  Images of the Authentic Products are attached hereto as **Exhibit A** and incorporated herein by reference.

77.     The Authentic Products have achieved great success since their introduction in 2013.

78.     The Authentic Products retail from $25.00 to $50.00 depending on the size and features of the pack.

79.     While Plaintiffs have gained significant common law trademark and other rights in their Authentic Products through their extensive use, advertising, and promotion, Plaintiffs have also protected their valuable rights by filing for and obtaining federal trademark registrations.

80.     Plaintiffs are the owners of U.S. Trademark Registration No. 4,499,249 for "FLUTTERBYE" for a variety of goods in Class 28 ("Flutterbye Mark") and U.S. Trademark Registration No. 3,743,669 for "FLUTTERBYE FAIRY" for a variety of goods in Class 28 ("Flutterbye Fairy Mark") (hereinafter collectively referred to as the "Marks").  A true and

correct copy of the registration certificates for the Marks is attached hereto as **Exhibit B** and incorporated herein by reference.

81.    The Marks have been in use in commerce in connection with the Authentic Products continuously since their constructive dates of first use and are currently in use in commerce in connection with the Authentic Products.  The constructive date of first use based on Plaintiffs' federal trademark registration for the Flutterbye Fairy Mark is at least as early as June 26, 2008 and the constructive date of first use based on Plaintiffs' federal trademark registration for the Flutterbye Mark is at least as early as December 19, 2012.

82.    In addition, Plaintiffs also own both registered and unregistered copyrights in and related to the Authentic Products.

83.    Plaintiffs have protected their valuable rights by filing and obtaining U.S. copyright registrations in and relating to the Authentic Products, their packaging, and their instruction manual.  Plaintiffs are the owners of the following U.S. Copyright Registrations (true and correct copies of the below detailed U.S. Copyright registrations certificates for the Copyright Works are attached hereto as **Exhibit C** and incorporated herein by reference):

a.      U.S. Copyright Registration No. VA 1-899-358 covering the Flutterbye

packaging artwork, as depicted beneath:



b.      U.S. Copyright Registration No. VA 1-861-460 covering the Flutterbye

Flying Toy figurine, as depicted beneath:



c.     U.S. Copyright Registration No. VA 1-901-312 covering the Flutterbye Flower Fairy toy, as depicted beneath:



d.     U.S. Copyright Registration No. 1-913-178 covering the Flutterbye Ocean Fairy toy, as depicted beneath:



      e.      U.S. Copyright Registration No. VA 1-912-815 covering the Flutterbye

Sunbeam Fairy toy, as depicted beneath:



      f.      U.S. Copyright Registration No. VA 1-900-805 covering the Flutterbye

Stardust Fairy toy, as depicted beneath:



g.     U.S. Copyright No. VA 1-899-356 covering the Flutterbye Fairy instructional manual, as depicted, in part, beneath:



84.     The success of the Authentic Products is due in large part to Plaintiffs' marketing, promotion, and distribution efforts.  These efforts include, but are not limited to, the advertising and promotion of the Authentic Products through Plaintiffs' website entirely dedicated to the Authentic Products, http://www.flutterbye.com/ ("Website"); nationwide television advertising campaigns for the Authentic Products; print and internet-based advertising and publicity for the Authentic Products; placement of the Authentic Products at dozens of authorized major retail outlets, both domestically and abroad; and Plaintiffs' participation in trade shows.

85.     Plaintiffs have spent substantial time, money, and effort in building up and developing consumer recognition, awareness, and goodwill in their Authentic Products, Marks, and Copyright Works.

86.     Plaintiffs' success is also due to their use of the highest quality materials and processes in making the Authentic Products.

87.     Additionally, Plaintiffs owe a substantial amount of the success of the Authentic Products to their consumers and the word-of-mouth buzz that their consumers have generated.

88.     As a result of Plaintiffs' efforts, the quality of their Authentic Products, their promotions, extensive press and media coverage, and word-of-mouth buzz, Plaintiffs' Marks, Copyright Works, and Authentic Products have become prominently placed in the minds of the public.  Members of the public have become familiar with Plaintiffs' Marks, Copyright Works, and Authentic Products, and have come to recognize the Marks, Copyright Works, and Authentic Products and associate them exclusively with Plaintiffs.  Plaintiffs have acquired a valuable reputation and goodwill among the public as a result of such association.

89.     Plaintiffs have gone to great lengths to protect their interests in and to Plaintiffs' Marks and Copyright Works.  No one other than Plaintiffs are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Marks or Copyright Works without the express written permission of Plaintiffs.

### The Digital Marketplaces and Defendants' Storefronts

90.     Alibaba.com, AliExpress.com, and DHgate.com are global online marketplaces which allow manufacturers, wholesalers, and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell, and ship their wholesale and retail products originating

from China directly to consumers worldwide, and specifically to consumers residing in the U.S., including New York (hereinafter collectively referred to as the "Digital Marketplaces").

91.     As the leaders of China's e-commerce and digital retail market, the Digital Marketplaces have generated hundreds of billions in sales worldwide.[1]   International markets, including the U.S., make up a significant percentage of the Digital Marketplaces' sales.   For example, in the last fiscal year, revenue from international retail sales grew by 25% on AliExpress.com to $342 million and 15% on Alibaba.com to $841 million.[2]   The press has reported that the growth in sales on AliExpress.com has resulted from an increase in the number of buyers, particularly from the U.S., as well as other large countries like Russia and Brazil.[3]   Additionally, according to *Business Insider*, excluding China, the U.S. was among the top five countries with packages coming from Alibaba's marketplaces on the company's "Singles' Day" (often compared to the U.S.'s Cyber Monday) in 2015, which resulted in over $14 billion in sales in one day.[4]   Further, DHgate.com offers 25 million consumer products from 1.2 million suppliers for sale on its platform and attributes over half of its sales to U.S. buyers alone.[5]

92.     As recently addressed in the *Wall Street Journal, Fortune*, and the *New York Times*,[6] and as reflected in the federal lawsuits filed against sellers offering for sale and selling

---

[1]*See* Kenneth Rapoza, *Jack Ma's Alibaba Promises Huge Sales Boom, $910 Billion In Merchandise Volume By 2020*, FORBES (Jun. 15, 2016), http://www.forbes.com/sites/kenrapoza/2016/06/15/jack-ma-foretells-huge-sales-boom-for-chinese-e-commerce-giant-alibaba/#78d364486b52.

[2] *See* Frank Tong, *Alibaba's annual web sales easily surpass U.S. e-retail sales,* DIGITALCOMMERCE360.COM (May 5, 2016), https://www.internetretailer.com/2016/05/05/alibabas-annual-web-sales-easily-surpass-us-e-retail-sales.

[3] *See* Frank Tong, *An Alibaba site sells $4.5 billion in one year to consumers outside of China,* DIGITALCOMMERCE360.COM (Sept. 11, 2014), https://www.internetretailer.com/2014/09/11/alibaba-site-sells-45-billion-one-year-consumers-outs.

[4] *See* Bob Bryan, *Alibaba just proved it's more than just some Chinese company,* BUSINESS INSIDER (Nov. 15, 2015), http://www.businessinsider.com/alibaba-international-expansion-2015-11.

[5] *See* Nona Tepper, *U.S. buyers account for half the sales on Hong Kong-based wholesale site DHgate.com,* DIGITALCOMMERCE360, (Jun. 22, 2015), https://www.internetretailer.com/2015/06/22/us-buyers-account-half-sales-dhgatecom.

[6] *See* Kathy Chu, *Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy,* WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-controversy-1463127605?; Scott Cendrowski, *Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods,* FORTUNE

infringing and/or counterfeit products on the Digital Marketplaces,[7] an astronomical number of counterfeit and infringing products are offered for sale and sold on the Digital Marketplaces at a rampant rate.

93.     Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their Storefronts on the Digital Marketplaces.

94.     Through their Storefronts, Defendants offer for sale and/or sell consumer products, including Infringing Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

**Defendants' Wrongful and Infringing Conduct**

95.     Particularly in light of Plaintiffs' success, their Authentic Products, as well as the reputation they have gained, Plaintiffs and their Authentic Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation, and fame that Plaintiffs have amassed in their Authentic Products, Marks, and the works embodied in the Copyright Works.

96.     Plaintiffs investigate and enforce against such activity, and through such efforts, learned of Defendants' actions which vary and include, but are not limited to, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for

(Aug. 10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; *see also* Kathy Chu, *Alibaba Suspends From Anticounterfeiting Group,* WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-suspended-from-anticounterfeiting-group-1463170527?tesla=y; Michael Schuman, *A Small Table Maker Takes On Alibaba's Flood of Fakes,* N.Y. TIMES (Mar. 18, 2017), https://www.nytimes.com/2017/03/18/business/alibaba-fake-merchandise-e-commerce.html.
[7] *See* Kathy Chu, *Luxury brands get tougher with counterfeiters – and Alibaba,* MARKETWATCH (Aug. 16, 2016), http://www.marketwatch.com/story/luxury-brands-get-tough-with-counterfeiters-2016-08-16-91031611; Gilian Wong, *Alibaba Sued Over Alleged Counterfeits,* WALL STREET JOURNAL (May 17, 2015), http://www.wsj.com/articles/alibaba-sued-over-alleged-counterfeits-1431877734; Scott Cendrowski, *There's no end in sight for Alibaba's counterfeit problem,* FORTUNE (May 18, 2015), http://fortune.com/2015/05/18/theres-no-end-in-sight-for-alibabas-counterfeit-problem/.

sale, and/or selling products bearing or used in connection with one or more of the Marks and/or Copyright Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Marks and/or Copyright Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Marks and/or Copyright Works, and/or products that are identical or confusingly or substantially similar to the Authentic Products (hereinafter collectively referred to as "Infringing Product(s)" or "Counterfeit Product(s)") to U.S. consumers, including those located in the state of New York, through Defendants' Storefronts.   Printouts of listings for Infringing Products from Defendants' Storefronts are included in **Exhibit D** attached hereto and incorporated herein by reference.

97.   Defendants are not and have never been authorized by Plaintiffs to copy, manufacture, import, export, advertise, distribute, offer for sale, or sell any Authentic Products or to use Plaintiffs' Marks and Copyright Works, or any marks or artwork that are confusingly or substantially similar to the Marks or Copyright Works.

98.   Defendants' Counterfeit Products are nearly indistinguishable from Plaintiffs' Authentic Products with only minor variations that no ordinary consumer would recognize.

99.   Plaintiffs retained New Alchemy Limited ("NAL"), a company that provides trademark infringement research services, to investigate and research manufacturers, wholesalers, retailers, and/or other merchants offering for sale and/or selling Infringing Products on the Digital Marketplaces.

100.   During its investigation, NAL identified Defendants as offering for sale and/or selling Infringing Products and contacted Defendants through their respective Storefronts expressing interest in placing a bulk order for Infringing Products and inquiring about methods of payment.  NAL also often requested the respective Defendants' e-mail addresses.  Printouts of

NAL's conversations with each of the Defendants are included in **Exhibit D** attached hereto and incorporated herein by reference.

101.   During its communications with Defendants, NAL specified a shipping address located in New York (the "New York Address") and verified that each Defendant provides shipping to the New York Address.  Printouts of the checkout pages, order forms, and/or pro forma invoices for the Infringing Products reflecting that Defendants agreed to ship Infringing Products to the New York Address are included in **Exhibit D** attached hereto and incorporated herein by reference.

102.   NAL confirmed that each Defendant was and/or still currently is offering for sale and/or selling Infringing Products through their respective Storefronts, accepting payment for such Infringing Products in U.S. Dollars through various payment processing services, and that each Defendant provides shipping and/or has actually shipped Infringing Products to the U.S., including to customers located in New York.  NAL's findings are supported by Defendants' listings for Infringing Products, their communications with NAL, and/or the checkout pages, order forms, and/or pro forma invoices for the Infringing Products which are included in **Exhibit D** attached hereto and incorporated herein by reference.

103.   For example, beneath on the left is an image of Plaintiffs' Authentic Product. Depicted beneath on the right is Defendant Geek Alert / Huntingeek's ("Geek Alert") Counterfeit Product currently being offered for sale and/or sold through its Aliexpress.com Storefront, https://geekalerts.aliexpress.com/, ("Geek Alert Storefront") (the "Geek Alert Counterfeit Product") using Plaintiffs' Marks, or a confusingly similar mark, on the packaging and/or product images as well as featuring and/or incorporating one or more of Plaintiffs' Copyright Works, or substantially similar artwork, on the descriptions and/or product images for

the Geek Alert Counterfeit Product ("Geek Alert Infringing Listing").   The Geek Alert Counterfeit Product is virtually identical to Plaintiffs' Authentic Product and features and/or incorporates Plaintiffs' Marks and one or more of Plaintiffs' Copyright Works.  It is indisputable that the Geek Alert Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing Plaintiffs' Authentic Products or that the Geek Alert Counterfeit Product is otherwise approved by or sourced from Plaintiffs, thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of Plaintiffs' Marks and Copyright Works.

**AUTHENTIC**                                  **COUNTERFEIT**

     

104. NAL has confirmed that Geek Alert offers shipping to New York, and a screenshot from the Geek Alert Infringing Listing depicted beneath confirm that Geek Alert offers "Free Shipping to United States via ePacket":



105. As another example, beneath on the left is an image of Plaintiffs' Authentic Product. Depicted beneath on the right is an image of Defendant Hunan Double Bulls Gifts Co., Ltd.'s ("Double Bulls") Counterfeit Product currently being offered for sale and/or sold through its Alibaba.com Storefront, https://doublebulls.en.alibaba.com, ("Double Bulls Storefront") (the "Double Bulls Counterfeit Product"), and using Plaintiffs' Marks, or a confusingly similar mark, in packaging, description, and/or product images as well as featuring and/or incorporating one or more of Plaintiffs' Copyright Works, or substantially similar artwork, on the packaging, descriptions, and/or product images for the Double Bulls Counterfeit Product ("Double Bulls Infringing Listing"). The Double Bulls Counterfeit Product is virtually identical to Plaintiffs' Authentic Product and features and/or incorporates Plaintiffs' Marks and Plaintiffs' Copyright Works. It is indisputable that the Double Bulls Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing Plaintiffs' Authentic Products or that the Double Bulls Counterfeit Product is otherwise approved by or sourced from Plaintiffs,

29

thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of Plaintiffs' Marks and Copyright Works.

**AUTHENTIC**



**COUNTERFEIT**



106.   NAL confirmed that Double Bulls offers shipping to New York, and a screenshot from the Double Bulls Infringing Listing depicted beneath confirms that Double Bulls repeatedly has shipped products into the U.S.:



107.     By these dealings in Infringing Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Infringing Products), Defendants have violated Plaintiffs' exclusive rights in their Marks and/or Copyright Works, and have used images and designs that are confusingly and/or substantially similar to, identical to, and/or constitute counterfeiting and/or infringement of Plaintiffs' Marks and Copyright Works in order to confuse consumers into believing that such Infringing Products are Authentic Products and aid in the promotion and sales of their Infringing Products.  Defendants' conduct began long after Plaintiffs' adoption and use of their Marks and Copyright Works, after Plaintiffs obtained the U.S. registrations for the same, as alleged above, and after Plaintiffs' Authentic Products and Marks became well-known to the purchasing public.

108.    Prior to and contemporaneous with their actions alleged herein, Defendants had knowledge of Plaintiffs' ownership of their Marks and Copyright Works, of the fame and incalculable goodwill associated therewith, and of the popularity and success of the Authentic Products, and in bad faith adopted Plaintiffs' Marks and Copyright Works.

109.    Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs, Plaintiffs' Marks, Copyright Works, and Authentic Products.

110.    Defendants' dealings in Infringing Products, as alleged herein, has caused, and will continue to cause, confusion, mistake, economic loss, and has and will continue to deceive consumers, the public, and the trade with respect to the source or origin of Defendants' Infringing Products, thereby causing consumers to erroneously believe that such Infringing Products are licensed by or otherwise associated with Plaintiffs, thereby damaging Plaintiffs.

111.    In committing these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiffs; infringed and counterfeited Plaintiffs' Marks; infringed Plaintiffs' Copyright Works; committed unfair competition; and unfairly and unjustly profited from such activities at Plaintiffs' expense.

112.    Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiffs.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Trademark Counterfeiting Under Sections 32, 34, and 35 of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d), and 1117(b)-(c)))**

113.    Plaintiffs replead and incorporate by reference each and every allegation set forth

in the preceding paragraphs as if fully set forth herein.

114.    Plaintiffs are the exclusive owners of all right and title to the Marks.

115.    Plaintiffs have continuously used the Flutterbye Fairy Mark in interstate commerce since at least as early as June 26, 2008 and the Flutterbye Mark in interstate commerce since at least as early as December 19, 2012.

116.    Without Plaintiffs' authorization or consent, with knowledge of Plaintiffs' well-known and prior rights in their Marks, and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated the Marks and/or used spurious designations that are identical with, or substantially indistinguishable from, the Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Counterfeit Products.

117.    Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiffs, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiffs' rights in and to the Marks, through their participation in such activities.

118.    Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of Plaintiffs' Marks to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Counterfeit Products which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit

Products, and is likely to deceive consumers, the public, and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiffs, thereby making substantial profits and gains to which they are not entitled in law or equity.

119.    Defendants' unauthorized use of Plaintiffs' Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs, and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in Plaintiffs' Marks.

120.    Defendants' actions constitute willful counterfeiting of Plaintiffs' Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

121.    As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiffs, their business, their reputations, and their valuable rights in and to Plaintiffs' Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiffs and their valuable Marks.

122.    Based on Defendants' actions as alleged herein, Plaintiffs are entitled to injunctive relief, damages for the irreparable harm that Plaintiffs have sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits, and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Infringement of Registered Trademarks)
### [115 U.S.C. § 1114/Lanham Act § 32(a)]

123.   Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

124.   Plaintiffs have continuously used the Flutterbye Fairy Mark in interstate commerce since at least as early as June 26, 2008 and the Flutterbye Mark in interstate commerce since as early as December 19, 2012.

125.   Plaintiffs, as the owner of all right, title, and interest in and to the Marks, have standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

126.   Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiffs are the owner of the federal trademark registrations for the Marks.

127.   Defendants did not seek, and therefore necessarily failed, to obtain consent or authorization from Plaintiffs, as the registered trademark owners of the Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale, and/or sell Authentic Products and/or related products bearing Plaintiffs' Marks into the stream of commerce.

128.   Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold Infringing Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies, and/or colorable imitations of the Marks and/or which are identical or confusingly similar to the Marks.

129.   Defendants knowingly and intentionally reproduced, copied, and colorably imitated the Marks and applied such reproductions, copies, or colorable imitations to packaging, wrappers, receptacles, online listings, and/or advertisements used in commerce upon, or in

connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or sale of Defendants' Infringing Products.

130.   Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiffs are the owner of all rights in and to the Marks.

131.   Defendants' egregious and intentional use of Plaintiffs' Marks in commerce on or in connection with Defendants' Infringing Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Infringing Products, and is likely to deceive the public into believing that Defendants' Infringing Products are Plaintiffs' Authentic Products or are otherwise associated with, or authorized by, Plaintiffs.

132.   Defendants' actions have been deliberate and committed with knowledge of Plaintiffs' rights and goodwill in the Marks, as well as with bad faith and the intent to cause confusion, mistake, and deception.

133.   Defendants' continued, knowing, and intentional use of Plaintiffs' Marks without Plaintiffs' consent or authorization, constitutes intentional infringement of Plaintiffs' federally registered Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

134.   As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiffs have suffered substantial monetary loss and irreparable injury, loss and damage to their business, and their valuable rights in and to Plaintiffs' Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss, and damage to Plaintiffs and their valuable Marks.

135.   Based on Defendants' actions as alleged herein, Plaintiffs are entitled to

injunctive relief, damages for the irreparable harm that Plaintiffs have sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits, and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
#### (False Designation of Origin, Passing Off & Unfair Competition)
#### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

136.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

137.    Plaintiffs, as the owners of all right, title, and interest in and to the Marks, have standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

138.    Plaintiffs' Marks are inherently distinctive and/or have acquired distinctiveness.

139.    Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly or substantially similar to, and constitute reproductions of Plaintiffs' Marks and Copyright Works, and affixed, applied, and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or sale of Infringing Products, with the intent to cause confusion, cause mistake, and deceive the purchasing public into believing, erroneously, that Defendants' substandard Infringing Products are Authentic Products or related products, and/or that Defendants' Infringing Products are authorized, sponsored, approved, endorsed, or licensed by Plaintiffs, and/or that Defendants are affiliated, connected, or associated with Plaintiffs, thereby

creating a likelihood of confusion by consumers as to the source of such Infringing Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, Plaintiffs' Marks and Copyright Works, to Defendants' substantial profit in blatant disregard of Plaintiffs' rights.

140.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the Infringing Products that are identical to, confusingly similar to, or which constitute colorable imitations of Plaintiffs' Authentic Products using marks and/or artwork that are identical and/or confusingly or substantially similar to, or which constitute colorable imitations of, Plaintiffs' Marks and Copyright Works, Defendants have traded off the extensive goodwill of Plaintiffs and their Authentic Products and did in fact induce, intend to induce, and will continue to induce customers into purchasing Defendants' Infringing Products, thereby directly and unfairly competing with Plaintiffs. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiffs and their Marks, which Plaintiffs have amassed through their nationwide marketing, advertising, sales, and consumer recognition.

141.    Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks and artwork that are identical or confusingly or substantially similar to and constitute reproductions of Plaintiffs' Marks and Copyright Works would cause confusion, mistake, or deception among purchasers, users, and the public.

142.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake, and to deceive

the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiffs, their Authentic Products, and their Marks and Copyright Works.

143.    As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiffs by depriving Plaintiffs of sales of their Authentic Products and by depriving Plaintiffs of the value of their Marks and Copyright Works as commercial assets in an amount as yet unknown, but to be determined at trial, for which they has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiffs and the goodwill and reputation associated with the value of Plaintiffs' Marks and Copyright Works.

144.    Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiffs have sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits, and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, and reasonable attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### (Federal Copyright Infringement)
### [17 U.S.C. § 501(a)]

145.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

146.    Plaintiffs are the exclusive owners of the Copyright Works.

147.    Defendants had actual notice of Plaintiffs' exclusive rights in and to the Copyright Works.

148.    Defendants did not attempt and failed to obtain Plaintiffs' consent or authorization

to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform, and/or market Plaintiffs' Authentic Products and/or Copyright Works.

149.    Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed Plaintiffs' Copyright Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Infringing Products which bear such Copyright Works, or artwork that is, at a minimum, substantially similar to Plaintiffs' Copyright Works.

150.    Defendants' unlawful and willful actions as alleged herein constitute infringement of Plaintiffs' Copyright Works, including Plaintiffs' exclusive rights to reproduce, distribute, and/or sell such Copyright Works in violation of 17 U.S.C. § 501(a).

151.    Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiffs in an amount as yet unknown but to be proven at trial, for which Plaintiffs have no adequate remedy at law, and unless enjoined, Defendants will continue to cause substantial and irreparable harm to Plaintiffs.

152.    Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief, Plaintiffs' actual damages, and Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### (Violation of Deceptive Acts and Practices Unlawful)
### [N.Y. Gen. Bus. Law § 349]

153.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

154.    Through Defendants' unlawful, unauthorized, and unlicensed use of Plaintiffs'

Marks and/or Copyright Works on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in Infringing Products which are identical and/or confusingly or substantially similar to Plaintiffs' Authentic Products, Defendants have engaged in consumer-oriented conduct that has adversely affected the public interest and has resulted in injury to consumers in New York.

155.   Defendants' aforementioned conduct was and is a willful and deliberate attempt to mislead consumers and constitutes the use of deceptive acts or practices in the conduct of business, trade, or commerce.  Such conduct has deceived and materially misleads, or has a tendency to deceive and materially mislead, the consuming public and has injured, and will continue to injure, Plaintiffs' business, reputation, and goodwill in violation of N.Y. Gen. Bus. Law §§ 349.

156.   As a result of Defendants' actions alleged herein, Plaintiffs have suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.

157.   Pursuant to N.Y. Gen. Bus. Law. § 349(h), Plaintiffs are entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements, and attorneys' fees.

**SIXTH CAUSE OF ACTION**
**(False Advertising Unlawful)**
**[N.Y. Gen. Bus. Law § 350]**

158.   Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

159.   Without the authorization of Plaintiffs, Defendants have used Plaintiffs' Marks and/or Copyright Works and/or marks, and/or artwork and/or packaging designs that are identical

and/or confusingly or substantially similar to Plaintiffs' Marks and/or Copyright Works in connection with the advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the Infringing Products which are identical and/or confusingly or substantially similar to Plaintiffs' Authentic Products, causing confusion, mistake, and deceiving consumers and the public as to the source, origin, sponsorship, or quality of Defendants' Infringing Products.

160.     Defendants' aforementioned willful and intentional conduct constitutes false advertising in the conduct of any business, trade, or commerce and has injured, and will continue to injure, Plaintiffs' business, reputation, and goodwill in violation of N.Y. Gen. Bus. Law § 350.

161.     As a result of Defendants' actions alleged herein, Plaintiffs have suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.

162.     Pursuant to N.Y. Gen. Bus. Law. § 350(e), Plaintiffs are entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements, and attorneys' fees.

**SEVENTH CAUSE OF ACTION**
**(Unfair Competition)**
**[New York Common Law]**

163.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

164.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the Infringing Products, Defendants have traded off the extensive goodwill of Plaintiffs and their Authentic Products to induce, and did induce, and intends and will continue to induce customers into purchasing their Infringing Products, thereby directly competing with Plaintiffs.  Such conduct

has permitted, and will continue to permit, Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiffs, which it has amassed through their nationwide marketing, advertising, sales, and consumer recognition.

165. Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the Infringing Products was and is in violation and derogation of Plaintiffs' rights and is likely to cause confusion, cause mistake, and to deceive consumers and the public as to the source, origin, sponsorship, or quality of Defendants' Infringing Products.

166. Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products would cause confusion, cause mistake or deceive purchasers, users and the public.

167. Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake, and to deceive in blatant disregard of Plaintiffs' rights and for the wrongful purpose of injuring Plaintiffs and their competitive position while benefiting Defendants.

168. As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiffs have been, and will continue to be, deprived of substantial sales of their Authentic Products in an amount as yet unknown but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and Plaintiffs have been, and will continue to be, deprived of the value of their Marks and Copyright Works as commercial assets, in an amount as yet unknown but to

be determined at trial, for which Plaintiffs have no adequate remedy at law.

169.    As a result of Defendants' actions alleged herein, Plaintiffs are entitled to injunctive relief, an order granting Plaintiffs' damages, and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

**EIGHTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**[New York Common Law]**

170.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

171.    By virtue of the egregious and illegal acts of Defendants as described herein, Defendants have been unjustly enriched in an amount to be proven at trial.

172.    Defendants' retention of monies gained through their deceptive business practices, infringement, acts of deceit, and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, inclusive, and each of them, as follows:

A.      For an award of Defendants' profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3), and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.      In the alternative, to Defendants' profits and Plaintiffs' actual damages, enhanced discretionary damages, and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just, which Plaintiffs may elect prior to the rendering of final judgment;

C.      For an award of Defendants' profits and Plaintiffs' damages in an amount to be proven at trial for willful trademark infringement of their federally registered Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.      For an award of Defendants' profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For an award of Plaintiffs' actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright infringement of Plaintiffs' Copyright Works under 17 U.S.C. § 501(a);

F.      In the alternative to Plaintiffs' actual damages and Defendants' profits for copyright infringement of Plaintiffs' Copyright Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 USC § 504(c) for willful copyright infringement, which Plaintiffs may elect prior to the rendering of final judgment;

G.     For an award of damages in an amount to be proven at trial for deceptive acts and practices unlawful pursuant to N.Y. Gen. Bus. Law. § 349(h);

H.     For an award of damages to be proven at trial for false advertising pursuant to N.Y. Gen. Bus. Law. § 350(e);

I.     For an award of damages to be proven at trial for common law unfair competition;

J.     For an award of damages in an amount to be proven at trial for unjust enrichment;

K.     For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

      i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the Infringing and/or Counterfeit Products;

      ii.  directly or indirectly infringing in any manner any of Plaintiffs' trademarks, copyrights, or other rights (whether now in existence or hereafter created) including, without limitation, Plaintiffs' Marks and/or Copyright Works;

      iii. using any reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' trademarks, copyrights, or other rights (whether now in existence or hereafter created) including, without limitation, Plaintiffs' Marks and/or Copyright Works to identify any goods or services not authorized by Plaintiffs;

iv.   using any of Plaintiffs' trademarks, copyrights, or other rights (whether now in existence or hereafter created) including, without limitation, Plaintiffs' Marks and Copyright Works, or any other marks or artwork that are confusingly or substantially similar to Plaintiffs' Marks and Copyright Works on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the Infringing Products;

v.   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake, and/or to deceive members of the trade and/or the public as to the affiliation, connection, or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, or sold by Defendants with Plaintiffs, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, or sold by Defendants and Defendants' commercial activities by Plaintiffs;

vi.   engaging in the unlawful, unfair, or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Infringing Products;

vii.   engaging in any other actions that constitute unfair competition with Plaintiffs;

viii.   engaging in any other act in derogation of Plaintiffs' rights;

ix. secreting, destroying, altering, removing, or otherwise dealing with the Infringing Products or any books or records that contain any information relating to manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the Infringing Products;

x. from secreting, concealing, destroying, altering, selling off, transferring, or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents, or any other records or evidence relating to Defendants' Storefronts, any money, securities, or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) ("Defendants' Assets") from or to accounts associated with or utilized by any Defendant or any Defendant's Storefront (whether said account is located in the U.S. or abroad) ("Defendants' Financial Accounts"), and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Counterfeit Products;

xi. from secreting, concealing, transferring, disposing of, withdrawing, encumbering, or paying any of Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court;

xii. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action; and

xiii.   instructing, assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (xii) above; and

L.      For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver to Plaintiffs for destruction any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials, and any other materials in the possession, custody, or control of such distributors and retailers that infringe any of Plaintiffs' trademarks, copyrights, or other rights including, without limitation, Plaintiffs' Marks or Copyright Works, or bear any marks that are confusingly or substantially similar to Plaintiffs' Marks and Copyright Works;

M.      For an order of the Court requiring that Defendants deliver for destruction to Plaintiffs any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising, and promotional materials and any other materials in the possession, custody, or control of Defendants that infringe any of Plaintiffs' trademarks, copyrights, or other rights including, without limitation, Plaintiffs' Marks or Copyright Works, or bear any marks that are confusingly or substantially similar to Plaintiffs' Marks and Copyright Works pursuant to 15 U.S.C. § 1118;

N.      For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains, and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale, and/or otherwise dealing in the Infringing and/or Counterfeit Products as described herein, including prejudgment interest;

O.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains, and advantages in Defendants' possession which rightfully belong to Plaintiffs;

P.      For an award of exemplary or punitive damages in an amount to be determined by the Court;

Q.      For Plaintiffs' reasonable attorneys' fees;

R.      For all costs of suit; and

S.      For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all claims.


Dated:  September 28, 2017                    Respectfully submitted,

                                              EPSTEIN DRANGEL LLP

                                              BY:  _____
                                                   Mary Kate Brennan (MB 5595)
                                                   mbrennan@ipcounselors.com
                                                   Jason M. Drangel (JD 7204)
                                                   jdrangel@ipcounselors.com
                                                   Ashly E. Sands (AS 7715)
                                                   asands@ipcounselors.com
                                                   Spencer J. Wolgang (SW 2389)
                                                   swolgang@ipcounselors.com
                                                   EPSTEIN DRANGEL LLP
                                                   60 East 42nd Street, Suite 2520
                                                   New York, NY 10165
                                                   Telephone: (212) 292-5390
                                                   Facsimile: (212) 292-5391
                                                   *Attorneys for Plaintiffs*
                                                   *Spin Master Ltd. and*
                                                   *Spin Master, Inc.*