UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :        17cv7422(DLC)
SPIN MASTER LTD. and SPIN MASTER INC., :
                                       :        OPINION AND ORDER
                     Plaintiffs,       :
          -v-                          :
                                       :
ALAN YUAN'S STORE, et al.,             :
                                       :
                     Defendants.       :
                                       :
-------------------------------------- X

APPEARANCES:

For plaintiffs:
Mary Kate Brennan
Spencer Wolgang
Jason M. Drangel
Ashly E. Sands
Epstein Drangel LLP
60 East 42nd St., Ste. 2520
New York, NY 10165


DENISE COTE, District Judge:

     Spin Master Ltd. and Spin Master Inc., part of a

multinational toy company, brought this suit against sixty-seven

individuals and/or businesses located in China.  Plaintiffs

claim that defendants infringed their federal trademark and

copyright rights by willfully designing, manufacturing, and

selling counterfeit copies of their original work, the

"Flutterbye Fairy" line of toys.  They also bring an unfair

competition claim under New York state law.  Since the filing of

this action on September 28, 2017, claims against thirty-five of

the defendants have been dismissed. Plaintiffs have moved for summary judgment on all claims against all thirty-two remaining defendants. For the following reasons, the plaintiffs' motion is granted.

BACKGROUND

The following describes the evidence submitted by the plaintiffs.[1] Plaintiffs Spin Master Ltd. and Spin Master, Inc. (collectively "Spin") design, manufacture, and sell "Flutterbye Fairy," a line of hand-held children's toys that are designed to look like fairies and marketed and sold under the "Spin Master Products" line. Spin is part of a large multinational toy and entertainment company, Spin Master Products, which designs and sells toys, including the Flutterbye Fairy toys and other products for children.

Spin sells various models of the Flutterbye Fairy toys, but each model commonly consists of a thin female human figure with arms outstretched in a "flying" pose, a small ornate dress,

---

[1] Because this summary judgment motion is unopposed, "unresponded-to statements of undisputed facts proffered by the movant" may be deemed admitted. Jackson v. Federal Exp., 766 F.3d 189, 194 (2d Cir. 2014). Each such statement, however, must be "supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." Id. In describing the evidence here, each statement is supported by record evidence sufficient to meet plaintiffs' burden of production on a motion for summary judgment.

short haircut, and mechanically movable wings around the figure's midsection.  Each model of the toy employs a vibrant, two-color scheme that is present in each of the models' features, and different models of the toy gain their distinct look through use of different color pairings and minor stylistic variations in the figure's hair styles, dresses, and wings.

Spin obtained U.S. Trademark Registration No. 4,499,249 for the "FLUTTERBYE" mark, and U.S. Trademark Registration No. 3,743,669 for the "FLUTTERBYE FAIRY" mark, each for a variety of goods in Class 28, Games and Sporting Goods.  The "FLUTTERBYE" mark has been in constructive use since at least as early as December 19, 2012, and the "FLUTTERBY FAIRY" mark has been in use since at least as early as June 26, 2008.  The marks have been continuously in use in connection with Spin Master Products since those dates.  Spin has also obtained multiple registrations for U.S. copyrights related to its products.[2]

---

[2] (1) No. VA 1-899-358, for the Flutterbye Flower Fairy's packaging artwork; (2) No. VA 1-861-460, for the Flutterbye Flying Toy figurine; (3) No. VA 1-901-312, for the Flutterbye Flower Fairy figurine; (4) No. VA 1-913-178, for the Flutterbye Ocean Fairy figurine; (5) No. VA 1-912-815, for the Flutterbye Sunbeam Fairy figurine; (6) No. VA 1-900-805, for the Flutterbye Stardust Fairy figurine; and (7) No. VA 1-899-356, for the Flutterbye Fairy instructional manual.

Spin sells its Spin Master Products, including the Flutterbye Fairy line, throughout the United States and the world both through the Spin Master Products website, and through major retailers and other online marketplaces, including Wal-Mart, Toys-R-Us, Target, Kohl's and Amazon.com.  The retail cost of a Flutterbye Fairy toy, depending on the particular size and design, is between $25 and $50. The toys have been commercially successful since their introduction in 2013.

Three online marketplace platforms -- Alibaba.com, Aliexpress.com, and DHgate (together, the "Digital Marketplaces") -- allow third-party merchants to advertise and sell wholesale and retail products from China to consumers worldwide, including consumers in New York and the rest of the United States.  The Digital Marketplaces have seen rapid growth in the past few years, and have generated hundreds of billions of dollars in sales worldwide, with a large portion of these sales being made to U.S. customers.

The Digital Marketplaces are rife with sales of counterfeit or infringing items.  It is the policy of Alibaba.com and Aliexpress.com not to terminate the accounts of merchants who reportedly sell infringing goods until the sites have received four infringement complaints about a particular merchant. Digital Marketplaces require minimal identifying information

from merchants.  Shipments of goods are often carried out using third party services; these shipments do not contain detailed identifying information from the merchants.  By omitting detailed identifying information, individual merchants are able to create multiple accounts on the Digital Marketplaces to sell inventory.  The Digital Marketplaces have thus garnered widespread attention in the international news media for failing to adequately monitor and exclude merchants of infringing and counterfeit products.

Prior to filing this action, Spin investigated, using the services of an investigative firm, third-party merchants offering to sell products infringing upon Spin's marks or copyrighted works on the Digital Marketplaces.  That investigation identified the defendants named in the complaint as selling counterfeit products through their storefronts on the Digital Marketplaces using or bearing the Flutterbye Fairy toy marks or copyrighted materials without plaintiffs' permission. None of the defendants are, or ever have been, authorized distributors or licensees of the Flutterbye Fairy line of products.

The defendants sell nearly identical products to Spin's, with small but noticeable differences.  Many of the defendants' items vary from the authentic products in their packaging,

labelling, and/or product coloring.  For example, the DHgate
storefront of one defendant, Shenzhen CBP Technology Co., LTD,
doing business as "Cbpbrucelam", advertises a "Flying Fairy"
toy.  This item is a female figurine with outstretched arms, a
short haircut of blue and purple hair, a small ornate dress, and
mechanically movable wings around the figure's midsection.  This
item appears to be designed to look like part of the Spin's
product line but closer inspection confirms that there are
differences between the "Flying Fairy" and Spin's Flutterbye
Fairy, which confirm that Cbpbrucelam's product is a
counterfeit.  Those differences include variation in the
dexterity of the figurine's bent arms, noticeable variation in
the figurine's coloring, the shape of the item's packaging, and
a lack of warning labels on the defendant's product.  Some
defendants sold their products using the words "flutter" and
"fairy" in the titles.  Some defendants appear to have
replicated the look -- images, colors, and shape -- of packaging
material from Spin's authentic products.

As part of its investigation, Spin contacted each of the
defendants, requesting to place a bulk order for the counterfeit
products.  Each defendant was able to provide shipping to a New
York address.  Each defendant has previously offered or is
currently still offering to sell counterfeit goods through their
Digital Marketplace storefronts, with some of the defendants

having already made shipments to New York containing allegedly counterfeit products.  The prices of the defendants' merchandise are significantly lower than the prices of Spin's products as sold through the Spin Master Products website or other licensed retailers.  Many of the defendants do not sell individual products: bulk orders are necessary.

PROCEDURAL HISTORY

Spin brought this suit claiming trademark counterfeiting and infringement and copyright infringement on September 28, 2017.  The complaint named sixty-seven defendants.  On the day the case was opened, this Court entered a temporary restraining order ("TRO") against all defendants and entered a preliminary injunction on November 1, 2017.  The preliminary injunction included, _inter alia_, an asset restraint.

Spin initially filed a motion for summary judgment on January 8, 2018.  The motion was refiled, pursuant to two deficient docket entry notices, on March 8.  As of June 26, thirty-two defendants remain in this action.  The claims against thirty-five defendants have been voluntarily dismissed.  No defendant has appeared.

## DISCUSSION

Summary judgment may not be granted unless all of the
submissions taken together "show[] that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary
judgment is appropriate when the record taken as a whole could
not lead a rational trier of fact to find for the non-moving
party." Smith v. Cnty. of Suffolk, 776 F.3d 114, 121 (2d Cir.
2015) (citation omitted). The moving party bears the burden of
demonstrating the absence of a material factual question, and in
making this determination, the court must view all facts in the
light most favorable to the non-moving party. See Eastman Kodak
Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992);
Gemmink v. Jay Peak Inc., 807 F.3d. 46, 48 (2d Cir. 2015).
"[W]here the evidentiary matter in support of the motion does
not establish the absence of a genuine issue, summary judgment
must be denied even if no opposing evidentiary matter is
presented." Sec. Ins. Co. of Hartford v. Old Dominion Freight
Line Inc., 391 F.3d 77, 83 (2d Cir. 2004) (citation omitted)
(emphasis omitted).

Once the moving party has asserted facts showing that the
non-movant's claims or affirmative defenses cannot be sustained,
"the party opposing summary judgment may not merely rest on the
allegations or denials of his pleading; rather his response, by

affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted), as is "mere speculation or conjecture as to the true nature of the facts." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). "Even when a motion for summary judgment is unopposed," a court must nevertheless "decide whether the movant is entitled to judgment as a matter of law." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004).

I. Liability

    a. Trademark Infringement

Lanham Act claims are analyzed under a two-part test: "The first prong looks to whether the senior user's mark is entitled to protection; the second to whether the junior user's use of its mark is likely to cause consumers confusion as to the origin or sponsorship of the junior user's goods." Guthrie Healthcare Sys. v. ContextMedia, Inc., 826 F.3d 27, 37 (2d Cir. 2016). Because the Lanham Act is a strict liability statute, a registrant need not prove knowledge or intent in order to establish liability. See Sunward Elec., Inc. v. McDonald, 362 F.3d 17, 25 (2d Cir. 2004). The first prong is satisfied by showing that a mark is valid and registered, owned by the registrant, and that the registrant has the exclusive right to use the mark in commerce. See Guthrie, 826 F.3d at 37. A certificate of registration establishes that a mark is "valid (i.e., protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999). When a plaintiff sues for infringement of its registered trademark, the defendant bears the burden to rebut the mark's protectability. Id.

"The likelihood-of-confusion prong turns on whether ordinary consumers are likely to be misled or confused as to the

source of the product in question because of the entrance in the
marketplace of the junior user's mark." Guthrie, 826 F.3d at 37
(citation omitted). Consumer confusion is "analyzed with
reference to the eight factors first articulated in Polaroid
Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir.
1961)." Cross Commerce Media, Inc. v. Collective, Inc., 841
F.3d 155, 168 (2d Cir. 2016).

> The eight factors are: (1) strength of the trademark;
> (2) similarity of the marks; (3) proximity of the
> products and their competitiveness with one another;
> (4) evidence that the senior user may "bridge the gap"
> by developing a product for sale in the market of the
> alleged infringer's product; (5) evidence of actual
> consumer confusion; (6) evidence that the imitative
> mark was adopted in bad faith; (7) respective quality
> of the products; and (8) sophistication of consumers
> in the relevant market.

Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec.
Univ., LLC, 823 F.3d 153, 160 (2d Cir. 2016) (citation omitted).
"The application of the Polaroid test is not mechanical, but
rather, focuses on the ultimate question of whether, looking at
the products in their totality, consumers are likely to be
confused." Kelly-Brown v. Winfrey, 717 F.3d 295, 307 (2d Cir.
2013) (citation omitted).

"Counterfeit marks are inherently confusing, and thus it is
not clear that a distinct likelihood-of-confusion analysis is
required for a counterfeit claim." River Light V, L.P. v. Lin &
J Intern., Inc., 13cv3669 (DLC), 2014 WL 6850966, at *16

(S.D.N.Y. Dec. 4, 2014).  Indeed, courts in this District generally agree that "where counterfeit marks are involved, it is not necessary to perform the step-by-step examination of each Polaroid factor because counterfeit marks are inherently confusing."  Fendi Adele S.R.L. v. Filene's Basement, Inc., 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010),  aff'd in part and vacated in part, 507 Fed. Appx. 26, 32 (2d Cir. 2013) (affirming judgment but vacating district court's determination of damages award).  See also, e.g., C=Holdings B.V. v. Asiarim Corp., 992 F. Supp. 2d 223, 241 (S.D.N.Y. 2013) ("Given that a counterfeit mark is inherently confusing, consumer confusion is presumed in such cases.") (citation omitted); Colgate-Palmolive Co. v. J.M.D. All-Star Import and Export Inc., 486 F. Supp. 2d 286, 289 (S.D.N.Y. 2007) (same); Lorillard Tobacco Co. v. Jamelis Grocery, Inc., 378 F. Supp. 2d 448, 455 (S.D.N.Y. 2005) (same).  The Lanham Act defines a counterfeit mark as

> a counterfeit of a mark that is registered [with] the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered.

15 U.S.C. § 1116(d)(1)(B)(i).

Spin has proven the first element of infringement, ownership of valid trademarks.  It is undisputed that Spin's marks are registered and entitled to protection.  The

counterfeits at issue bore reproductions of the FLUTTERBYE and FLUTTERBYE FAIRY marks that are registered on the Principal Registry of the U.S. Patent and Trademark Office. The validity and ownership of Spin's marks are not contested.

Spin has the exclusive right to use the marks in commerce and it is undisputed that the defendants use the marks "in commerce." The Lanham Act provides that a "mark shall be deemed to be in use in commerce . . . on goods when . . . it is placed in any manner on the goods or their containers ... and ... the goods are sold or transported in commerce." 15 U.S.C. § 1127. The sale of counterfeit goods is sufficient use to establish liability. See El Greco Leather Prods. Co. v. Shoe World, Inc., 806 F.2d 392, 396 (2d Cir. 1986) ("Even though [defendant] was involved neither in the manufacture nor the affixing of the [plaintiff's] trademark to the shoes, its sale of the shoes was sufficient use for it to be liable for the results of such infringement.").

Spin has also established that the use of counterfeit FLUTTERBYE and FLUTTERBYE FAIRY marks creates a likelihood of confusion. It is undisputed that the products sold by the defendants are counterfeit products and are thus inherently confusing to consumers. Even under a Polaroid analysis, Spin would succeed in establishing consumer confusion based on the

national and international recognition of the trademarks, as
well as the defendants' deliberate use of identical marks to
sell products that appear purposefully designed to be
indistinguishable from Spin's products.  Spin owns the
FLUTTERBYE and FLUTTERBYE FAIRY trademarks, the defendants used
those marks in commerce without Spin's consent, and that use
resulted in consumer confusion.  Spin is entitled to summary
judgment on its trademark infringement claims.

    b. Copyright Infringement

    Spin is entitled to summary judgment on its copyright
infringement claims.  To establish copyright infringement, a
plaintiff must prove "1) that his work is protected by a valid
copyright, 2) that the defendant copied his work, and 3) that
the copying was wrongful."  Zalewski v. Cicero Builder Dev.,
Inc, 754 F.3d 95, 100 (2d Cir. 2014).  Like trademark
infringement, copyright infringement is a strict liability
offense, meaning "intent or knowledge is not an element of
infringement."  Fitzgerald Publ'g. Co. v. Baylor Publ'g Co., 807
F.2d 1110, 1113 (2d Cir. 1986).

    It is undisputed that Spin holds valid copyright
registrations, see supra.  Such registration is prima facie
evidence of the first element of copyright infringement --
ownership of a valid copyright.  See Scholz Design, Inc. v. Sard

Custom Homes, LLC, 691 F.3d 182, 186 (2d Cir. 2012).

The "sine qua non" of all copyright protection is originality. N.Y. Mercantile Exch., Inc. v. Intercontinental Exch., Inc., 497 F.3d 109, 113 (2d Cir. 2007); see Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991). Originality entails independent creation by the author, and "at least some minimal degree of creativity." Feist Publ'ns, 499 U.S. at 345. To show wrongful copying, a plaintiff must show a "substantial similarity" between the infringing and infringed work. Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir. 2003)(citation omitted).

When evaluating whether there is substantial similarity between the defendant's work and the protectable elements of the plaintiff's work, "no discovery or fact-finding is typically necessary, because what is required is only a . . . comparison of the works." Peter F. Gaito, 602 F.3d 57, 64 (2d Cir. 2010) (citation omitted). Two works are not substantially similar as a matter of law if "the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or [if] no reasonable jury, properly instructed, could find that the two works are substantially similar." Id. at 63 (citation omitted).

"The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and

regard the aesthetic appeal as the same." Id. at 66 (citation

omitted). With "inexact copies," Tufenkian Imp./Exp. Ventures,

338 F.3d at 133, the substantial similarity assessment proceeds

by a comparison of the "total concept and feel of the contested

works" as "instructed by common sense." Boisson v. Banian,

Ltd., 273 F.3d 262, 272, 273 (2d Cir. 2001) (citation omitted).

"Where the work at issue contains both protectible and

unprotectible elements, the test must be 'more discerning,'

excluding the unprotectible elements from consideration." Nihon

Keizai Shimbun, Inc. v. Comline Bus. Data, Inc., 166 F.3d 65, 70

(2d Cir. 1999) (citation omitted).

It is undisputed that the Spin products are original. It

is also undisputed that access to the Spin designs for the

purposes of copying can be inferred because Spin's products are

widely disseminated and internationally popular. The

defendants' products are substantially similar to Spin's; in

many instances, they are near identical replicas. An ordinary

observer would find that defendants copied Spin's works.

c. False Designation of Origin, Passing Off, and Unfair
   Competition

Spin is entitled to summary judgment on its claims for

false designation of origin, passing off, and unfair competition

pursuant to Section 43(a) of the Lanham Act. 15 U.S.C. §

1125(a). Section 43(a) of the Lanham Act prohibits any person

from using in commerce, in connection with any goods, "any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods . . . by another person."  15 U.S.C. § 1125(a)(1).  The purpose of Section 43(a) "is to prevent consumer confusion regarding a product's source and to enable those that fashion a product to differentiate it from others on the market."  EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos, Inc., 228 F.3d 56, 61 (2d Cir. 2000) (citation omitted).

The "central inquiry" under a Section 43(a) claim is the "likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question."  Id. (citation omitted).  The test utilizes the same principles and standards as are used for trademark infringement claims.  Id. at 62.  Spin is entitled to summary judgment on its trademark claims.  Spin is therefore entitled to summary judgment on its claims brought under Section 43(a).

d. New York State Law Unfair Competition Claim

Spin is also entitled to summary judgment on its state law unfair competition claim pursuant to New York Law.  The

"essence" of a claim for unfair competition under New York law is that the defendant has misappropriated "the labors and expenditures of another" in a manner "likely to cause confusion or to deceive purchasers as to the origin of the goods." Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34-45 (2d Cir. 1995) (citation omitted). To establish a claim for common law unfair competition, a plaintiff must state a Lanham Act claim coupled with a showing of a defendant's bad faith or intent. See Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 149 (2d Cir. 1997) ("[Plaintiff's] state law claim of unfair competition is not viable without a showing of bad faith."). See also Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34 (2d Cir. 1995) ("[T]he essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another.").

Under New York law, a presumption of bad faith attaches to the use of a counterfeit mark. See, e.g., Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc., 830 F.2d 1217, 1228 (2d Cir. 1987) ("[A]wareness [that a mark is in use] can give rise to an inference of bad faith."); Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp., 689 F. Supp. 2d 585, 599 (S.D.N.Y. 2010) ("Use of a counterfeit mark creates a presumption of bad faith."); L'Oreal USA Inc. v. Trend Beauty Corp., 11cv4187(RA), 2013 WL 4400532, at *22 (S.D.N.Y. Aug. 15, 2013) ("Because

[defendant] has conceded that it is liable . . . for its sale of counterfeit goods . . . bad faith is presumed.).  Here, defendants are liable under the Lanham Act for trademark counterfeiting and thus bad faith is presumed.


II. Damages

  a. Statutory Damages

  Spin has elected to seek statutory damages under both the Lanham Act and the Copyright Act.

  The Lanham Act provides that, "at any time before final judgment is rendered by the trial court," plaintiffs may elect an award of statutory damages in lieu of profits and damages. 15 U.S.C. § 1117(c).  Once liability is established, "if the court finds that the use of the counterfeit mark was willful," it may award up to "$2,000,000 per counterfeit mark per type of goods or services sold . . . as the court considers just."  Id. § 1117(c)(2).  Statutory damages are intended "not merely [to] compel[] restitution of profit and reparation for injury but also [are] designed to discourage wrongful conduct."  N.A.S. Imp., Corp. v. Chenson Enterprises, Inc., 968 F.2d 250, 252 (2d Cir. 1992) (citation omitted) (Copyright Act); see also Coach, Inc. v. Zhen Zhen Weng, No. 13cv445 (AJS), 2014 WL 2604032, at

*18 (S.D.N.Y. June 9, 2014) ("Congress intended the statutory damages under 15 U.S.C. § 1117(c) to both compensate and deter.").

"Under the Copyright Act, the copyright holder may elect between two measures of damages, actual damages and profits, or statutory damages of between $500 and $20,000 for all infringements with respect to any one work." Twin Peaks Productions, Inc. v. Publications Intern., Ltd., 996 F.2d 1366, 1380 (2d Cir. 1993) (citing 17 U.S.C. § 504). "If the defendant's infringement was willful, however, the district court may also, in its discretion [under 17 U.S.C. § 504(c)(2)], enhance the statutory damages award to as much as $150,000 per infringed work." Island Software and Computer Service, Inc. v. Microsoft Corp., 413 F.3d 257, 262-63 (2d Cir. 2005). "To prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." Id. at 263 (citation omitted).

Spin acknowledges that no definitive authority in this Circuit supports an award of dual statutory damages for the same infringed product. Indeed, the weight of authority in this Circuit does not support such an award. The Second Circuit has

repeatedly cautioned that, "[a] plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery." Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 497 (2d Cir. 1995). See also Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 720 (2d Cir. 1992) (holding that a party "may not obtain a double recovery where the damages for copyright infringement and trade secret misappropriation are co-extensive"); Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc., 118 F.3d 955, 969-70 (2d Cir. 1997) (computer software creator was not entitled to additional damages for trade secret misappropriation where district court found that such damages were co-extensive with those awarded for copyright infringement).

This Court declines to award duplicative awards of statutory damages. Statutory damages under the Lanham Act are appropriate here. In purchasing counterfeit products, some, if not most, of defendants' customers may well have thought that they were buying plaintiffs' genuine products. This is, at its core, a trademark case.

Spin requests a total of $160,000 in statutory damages, or $50,000 per defendant.[3] It does not indicate how much it seeks

---

[3] Thirty-two defendants remain in this action.

under the Lanham Act specifically and under the Copyright specifically, or for each item.  Instead, Spin seeks a lump sum award, per defendant.

The Lanham Act does not provide guidelines for courts to use in determining an appropriate award of statutory damages; it is only limited by what "the court considers just."  17 U.S.C. 1117(c).  Thus, when considering an award of statutory damages under the Lanham Act, courts in this District have imported from copyright law a multifactor test, first articulated by the Second Circuit in Fitzgerald Pub. Co. v. Baylor Pub. Co., 807 F.2d 1110, 1117 (2d Cir. 1986).[4]  See, e.g., Tiffany (NJ) LLC v. Dong, No. 11cv2183 (GBD) (FM), 2013 WL 4046380, at *5 (S.D.N.Y. Aug. 09, 2013) (collecting cases).

Spin has established that the defendants' use of the counterfeit mark was willful.  Although the Second Circuit has not explicated the definition of "willful" in the trademark context, proving "willfulness" under copyright law requires "(1) that the defendant was actually aware of the infringing

_____

[4] Under Fitzgerald, courts look to factors such as: (i) "the expenses saved and the profits reaped"; (ii) "the revenues lost by the plaintiff"; (iii) "the value of the copyright"; (iv) "the deterrent effect on others besides the defendant"; (v) "whether the defendant's conduct was innocent or willful"; (vi) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced"; and (vii) "the potential for discouraging the defendant." Fitzgerald, 807 F.2d at 1117 (citation omitted).

activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." Island Software, 413 F.3d at 263. "Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 388 (2d Cir. 2005).

The defendants' selling activity demonstrates that defendants acted willfully. Notably, the defendant sellers hid behind internet aliases to avoid detection, and often created multiple aliases to continue to sell products. Some defendants sold their products using the words "flutter" and "fairy" in the titles, demonstrating an intent to sow confusion between their products and the plaintiffs'. Some defendants even copied the packaging material and images from plaintiffs' authentic products. Spin acknowledges that the defendants have ceased selling the counterfeit products pursuant to the TRO, but credibly argues that there remains a significant possibility that they will continue to sell under new aliases yet unknown to the plaintiffs. The defendants' prior tactics support this theory.

Here, there is no evidence with respect to the first and second Fitzgerald factors.  Courts, however, have supported an inference of a broad scope of operations in cases dealing specifically with websites that ship and sell to a wide geographic range, such as the websites on which defendants operate in this case.  See Rolex Watch U.S.A, Inc. v. Jones, 99cv2359 (DLC) (FM), 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002), report and recommendation adopted, 99cv2359 (DLC) (S.D.N.Y. June 14, 2002) (an award of $25,000 per mark, while sufficient for willful trademark infringement in brick-and-mortar stores, may be inadequate given "the virtually limitless number of customers available to [defendant] through his Web sites").  Therefore, factors (i) and (ii) weigh in favor of granting Spin's damages request.

Other Fitzgerald factors weigh in favor of a relatively high statutory damages award.  Spin's marks are valuable: its products are internationally recognized and highly coveted.  Considering the defendants' default, the determination of statutory damages must be conducted without the benefit of documentation relating to the defendants' profits.

This Court has discretion to award anywhere between $1,000 and $2,000,000 per counterfeit mark per type of good sold.  An

award of $50,000 per defendant is appropriate and just, given
that each defendant sold at least one infringing product.


   b. Post-Judgment Interest

     Spin seeks post-judgment interest on any damages award.
Defendants, having failed to appear, do not oppose this request.
Post-judgment interest is awarded on any money judgment
recovered in a civil case.  See 28 U.S.C. § 1961.  Post-judgment
interest is measured "from the date of the entry of the
judgment, at a rate equal to the weekly average 1-year constant
maturity Treasury yield . . . for the calendar week preceding
the date of the judgment," "computed daily to the date of
payment" and "compounded annually."  Id. § 1961(a)-(b).
Accordingly, Spin shall be awarded post-judgment interest in an
amount to be determined according to the statutory formula.

   c. Attorneys' Fees and Costs

   Pursuant to the Lanham Act, the Court may award reasonable
attorneys' fees and costs to the prevailing party in
"exceptional cases."  15 U.S.C. § 1117(a).  "The finding of
willfulness determines the right to attorney's fees."  Louis
Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d
Cir. 2012) (citation omitted).  Moreover, attorneys' fees are

routinely awarded under the Copyright Act to the prevailing
party.  17 U.S.C. § 505.  In deciding whether to award
attorneys' fees, courts have been instructed to consider
"several nonexclusive factors," including "frivolousness,
motivation, objective unreasonableness (both in the factual and
in the legal components of the case) and the need in particular
circumstances to advance considerations of compensation and
deterrence."  Matthew Bender & Co. v. West Publ'g Co., 240 F.3d
116, 121 (2d Cir. 2001) (citation omitted).

An award of attorneys' fees is appropriate here.
Defendants willfully infringed Spin's intellectual property
rights, and an award of attorneys' fees furthers the goals of
the Lanham Act and Copyright Act, including deterrence of
willful infringement. See Kepner-Tregoe, Inc. v. Vroom, 186 F.3d
283, 289 (1999) (affirming award of attorneys' fees under the
Copyright Act as "justified based on the court's finding of
willfulness" and "in line with the statutory goal of
deterrence").

Spin has requested an order authorizing the transfer of the
defendants' frozen assets to, in part, satisfy attorneys' fees
awarded to them.  A scheduling order which accompanies this
Opinion includes a schedule for plaintiffs' submissions
regarding this request for attorneys' fees.

III. Injunctive Relief

Plaintiffs are entitled to permanent injunctive relief. Courts "have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark" or to prevent further violation of the Lanham Act and Copyright Act by the defendant. 15 U.S.C. § 1116(a); 17 U.S.C. § 502(a).

In order to obtain a permanent injunction under both statutes, a plaintiff must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (Copyright Act and Patent Act); Salinger v. Colting, 607 F.3d 68, 78 (2d Cir. 2010) (noting eBay four-factor

test is "the presumptive standard for injunctions in any context").

Defendants did not appear and therefore did not oppose the entry of a permanent injunction.  See Barrientos v. 1801-1825 Morton LLC, 583 F.3d 1197, 1215 (9th Cir. 2009) ("[Defendant] did not object to the scope of the injunction before the district court and, therefore, has waived the objection.").  The facts of this case clearly satisfy the applicable four-factor eBay standard.

III. Asset Restraint and Transfer of Assets

The asset restraint imposed at the outset of this litigation may remain in place post-judgment.  Without such a restraint, defendants would have fourteen days during which they could hide their assets.  See Fed. R. Civ. P. 62(a) ("[N]o execution may issue on a judgment, nor may proceedings be taken to enforce it, until 14 days have passed after its entry.").  Such relief will aid in the enforcement of the judgment.  Spin has demonstrated that the defendants are likely to hide their assets.  The restraint shall continue until plaintiffs can enforce and satisfy the judgment entered by this Court.

Similarly, Spin is entitled to the transfer of the frozen assets to the plaintiffs as full or, when relevant, partial satisfaction of the damages award.

## CONCLUSION

The plaintiffs' March 8 motion for summary judgment is granted. Plaintiffs are entitled to damages in the amount of $50,000 per defendant that remains in this action, plus post-judgment interest. Plaintiffs are also entitled to permanent injunctive relief.

Dated:    New York, New York
          June 29, 2018

DENISE COTE
United States District Judge